UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
DOLLAR PHONE CORP. and
DOLLAR PHONE SERVICES, INC.,

                     Plaintiffs,

      - v -

ST. PAUL FIRE and MARINE
INSURANCE COMPANY,

                  Defendant.
----------------------------------------------------------------x

**REPORT AND**
**RECOMMENDATION**

CV-09-1640 (DLI) (VVP)

POHORELSKY, Magistrate Judge:

      The parties have cross-moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 in this action brought by the Dollar Phone Corp. and Dollar Phone Services, Inc. ("Dollar Phone" or "plaintiff") against its insurer St. Paul Fire and Marine Insurance Company ("St. Paul" or "defendant") for breach of an insurance contract and for violations of New York state law.  In the Complaint, Dollar Phone asserts that St. Paul wrongfully refused to defend and indemnify it in an action brought against Dollar Phone in the District of New Jersey ("New Jersey action").  St. Paul has moved for summary judgment on the entirety of the claims in the Complaint while Dollar Phone has cross-moved on its breach of contract claim.  Judge Irizarry has referred the motions to me for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons that follow, the undersigned recommends that summary judgment should be granted in favor of St. Paul and that the Complaint be dismissed in its entirety.

# I. BACKGROUND & PROCEDURAL HISTORY

In setting out the facts, the court relies on the Local Civil Rule 56.1 Statements of Fact filed by the parties, as well as the exhibits attached to the parties' moving papers, and the pleadings, admissions, and prior discovery rulings that have occurred.[1]

The plaintiff Dollar Phone is a provider of prepaid telephone card services. In March 2007, Dollar Phone was named as one of more than 100 defendants in an action brought in the District of New Jersey by IDT Telecom, Inc. ("IDT" or "New Jersey plaintiff"), another provider of prepaid telephone card services and a competitor of Dollar Phone. *IDT Telecom, Inc. et al. v. CVT Prepaid Solutions, Inc., et al*, No. 2:07-cv-1076 (D.N.J.) ("the New Jersey action"). An amended complaint was filed in April 2007. *See* First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages, and Demand for Jury Trial, in 2:07-cv-1076 (D.N.J.) ("New Jersey complaint"), attached to *Velardo Aff.* at Ex. C. In that action, IDT asserted ten claims for violations of various federal and state laws, including a false advertising claim under the Lanham Act (15 U.S.C. § 1125(a)(1)). The complaint alleged that Dollar Phone and its co-defendants defrauded their customers by failing to provide the number of minutes promised on their calling cards and in their advertisements. IDT asserted that by promising more minutes per dollar than IDT provided, Dollar Phone's advertising implied that IDT's cards were overpriced. As a result, IDT claimed to have suffered injury to its reputation and losses in market share. Dollar Phone denied the allegations in the New Jersey complaint and filed numerous counterclaims against IDT and its officers.

Prior to the filing of the New Jersey action, Dollar Phone had purchased an insurance policy ("the Policy") from St. Paul, the relevant portions of which were in effect when the action

---

[1]  In support of their cross-motions for summary judgment, the parties have filed Rule 56.1 Statements of Fact [DE 63-17, 69-21, 70-1]. The plaintiff has submitted an affidavit of Peretz Bronstein with supporting exhibits at DE 69-3 through 69-17 (hereafter "*Bronstein Aff.*"), the affidavit of Eitan Kimelman with supporting exhibits at DE 69-18 through 69-19 (hereafter "*Kimelman Aff.*"), and the affidavit of Noson Kopel, at DE 69-20.  The defendant has submitted an affidavit of Vincent J. Velardo with supporting exhibits at DE 63 through 63-16 (hereafter "*Velardo Aff.*").

was commenced. Dollar Phone timely notified St. Paul of the IDT Complaint and demanded that St. Paul defend it under the Policy. St. Paul did not undertake Dollar Phone's defense obligations. In March 2007, Dollar entered into a settlement agreement with IDT. In November 2007, however, IDT sent Dollar Phone a letter that accused it of violating the settlement agreement, and Dollar Phone promptly sent an email to St. Paul, via its insurance broker, notifying it of IDT's letter. Dollar Phone was thereafter reinstated as a defendant in the New Jersey action.

In June 2008, St. Paul wrote a letter to Dollar Phone disclaiming coverage for the claims asserted in the New Jersey action. Included in the letter was an explanation of the reasons for the coverage decision. In October 2008, after an amended complaint in the New Jersey action had been filed and after Dollar Phone had filed its counterclaims, IDT and Dollar Phone entered into another settlement agreement discontinuing their claims against each other.

On November 11, 2008, Dollar Phone's counsel sent a letter to St. Paul stating that St. Paul's refusal to defend it in the New Jersey action was a bad faith claim denial. The letter provided an explanation of how St. Paul's analysis of the Policy and its application was mistaken. St. Paul responded to this letter on November 12, 2008, reiterating the same points made in its earlier letter disclaiming coverage for the IDT action.

Dollar Phone commenced this action in March 2009 in New York State court, alleging a claim for breach of contract and three claims under Section 349 of the New York General Business Law. The action was removed to this court in April 2009 based on diversity jurisdiction.

## II.  SUMMARY JUDGMENT

Summary judgment will be granted if no genuine issue of material fact remains to be decided and the undisputed facts warrant judgment for the moving party as a matter of law. See Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Inst. for Shipboard*

*Educ. v. Cigna Worldwide Inc. Co.*, 22 F.3d 414, 418 (2d Cir. 1994). If a reasonable jury could return a verdict in favor of the non-moving party, a material issue of fact remains in contention and the motion for summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). On the other hand, if the evidence in favor of the non-movant is "merely colorable" or so insufficient such that no rational trier of fact could find in its favor, summary judgment may be granted. *Id.* at 249-50 (citing *Dombrowski v. Eastland*, 387 U.S. 82 (1967)). Any ambiguities and all inferences must be drawn in favor of the non-movant, and the court must view the evidence in the light most favorable to the non-movant. *See Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 85 (2d Cir. 2006); *Inst. for Shipboard Educ.*, 22 F.3d at 418; *Twin Labs, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990). The court is charged not with weighing the evidence or even with determining the truth, but with ensuring that genuine issues of fact remain in dispute. *See Century Pacific, Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 218 (S.D.N.Y. 2007) (citing cases).

The burden of proving that no material issue of fact remains in dispute rests on the moving party. *Celotex Corp.*, 477 U.S. at 322; *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Where both sides move for summary judgment, each party's motion is examined on its own merits, and all reasonable inferences are drawn against the party whose motion is under consideration. *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011). If the moving party meets that initial burden by making an evidentiary showing suggesting that no material factual issues remain, the burden then shifts to the non-moving party to produce evidence raising a material question of fact. See Fed. R. Civ. Pro. 56(e); *Miner v. Clinton County, New York*, 541 F.3d 464, 471 (2d Cir. 2008); *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1998). Thus, to avoid summary judgment, the non-movant must set forth specific factual allegations. *Kurisoo v. Providence and Worcester R.R. Co.*, 68 F.3d 591, 594 (2d Cir. 1995); *Fahle v Braslow*, 913 F. Supp. 145, 148-49 (E.D.N.Y. 1996) (citations omitted),

*aff'd*, 111 F.3d 123 (2d Cir. 1997).  In this vein, conclusory, *ipse dixit* assertions are not sufficient to defeat summary judgment.  *Western World Ins. Co. v. Stock Oil Inc.*, 922 F.2d 118, 121 (2d Cir. 1990).  "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient' to defeat summary judgment.  Rather, 'there must be evidence on which the jury could reasonably find for the [non-movant].'  Moreover, the opposing party must set forth 'concrete particulars' showing that a trial is needed."  *Cousin v. White Castle System, Inc.*, No. 06-CV-6335, 2009 WL 1955555, at *4 (E.D.N.Y. July 6, 2009) (quoting *Anderson*, 477 U.S. at 252).

Although the non-movant need not produce evidence in a form that would be admissible at trial, it cannot rest on the pleadings, and must set forth specific facts in affidavits, depositions, answers to interrogatories, or admissions on file, which together demonstrate a genuine issue for trial.  Fed. R. Civ. Pro. 56(e); *Celotex Corp.*, 477 U.S. at 324; *United States v. Rem*, 38 F.3d 634, 643-44 (2d Cir. 1994); *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004); *Grennan v. Nassau County*, No. 04-CV-2158, 2007 WL 952067, at *5 (E.D.N.Y. Mar. 29, 2007).  That said, a non-movant who bears the burden of proof at trial is not required to submit affidavits, but may oppose the motion on the basis of the pleadings, depositions, and admissions on file.  *Celotex*, 477 U.S. at 324; *Patterson*, 375 F.3d at 219.  Moreover, a "verified pleading, to the extent that it makes allegations on the basis of the plaintiff's personal knowledge, and not merely on information and belief, has the effect of an affidavit and may be relied on to oppose summary judgment."  *Patterson*, 375 F.3d at 219 (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001)).  The materiality of the facts is determined by the substantive law governing the claims, and whether they "might affect the outcome of the suit under the governing law[.]"  *Anderson*, 477 U.S. at 248.

Local Civil Rule 56 directs litigants to file statements and counter-statements of material facts about which there is no dispute, and also requires that each factual statement be followed

by a citation to admissible evidence, in accordance with Federal Rule 56(e). The court, in its discretion, however, may "overlook a party's failure to comply with local rules, including Rule 56.1." *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp.2d 77, 83-84 (E.D.N.Y. 2010) (citing *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001)). Even in the absence of a Rule 56.1 statement altogether, courts have proceeded to rule on the basis of the underlying evidence. *See Locke*, 690 F. Supp. 2d at 84 (granting summary judgment for defendant despite failure to file Rule 56.1 statement); *Doe v. Nat'l Bd. of Podiatric Med. Examiners*, No. 03-CV-4034, 2004 WL 912599, at *3 (S.D.N.Y. Apr. 29, 2004) ("Plaintiff's motion will not be denied simply for failure to file a Local Rule 56.1 statement."); *United States v. Abady*, No. 03-CV-1683, 2004 WL 444081, at *2-3 (S.D.N.Y. Mar. 11, 2004) (defendant's failure to submit Rule 56.1 statement notwithstanding, court examines underlying evidence and substance of the claim before granting summary judgment for plaintiff). Lastly, a court "may in its discretion, opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file such a [Rule 56.1] statement." *Holtz*, 258 F.3d at 73 (quoting *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000)).

## DISCUSSION

In the analysis that follows, the court examines first Dollar Phone's breach of contract claim. That claim alleges that St. Paul breached the insurance contract by failing to honor its obligations under two separate and independent portions of the Policy, the General Liability provisions and the Errors and Omissions provisions. In addressing the breach of contract claim, the court also examines various exclusions from coverage asserted by St. Paul which are found in the Policy. Finally, the court examines whether St. Paul is entitled to summary judgment on Dollar Phone's claims under Section 349 of the New York General Obligations Law.

**III.  LEGAL STANDARDS: CONTRACT INTERPRETATION, DUTY TO DEFEND AND INDEMNIFY**

The parties agree that New York law governs this dispute.  As the determination of the parties' rights and obligations under the Policy will require an interpretation of the provisions at issue, a brief review of New York law concerning the interpretation of insurance contracts is appropriate.  In New York, the interpretation of an insurance policy is a question of law and while a court will give "an unambiguous provision . . . its plain and ordinary meaning" it is to liberally construe the policy in favor of the insured.  *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115-16 (2d Cir. 2005). *See also White v. Continental Cas. Co.*, 9 N.Y.3d 264, 267 (2007).  A contract is unambiguous if the "language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion."  *White*, 9 N.Y.3d at 267 (citations and alterations omitted).  If the court determines that the contract is unambiguous, the court may resolve a disputed question of construction as a matter of law at the summary judgment stage.  *See Alexander & Alexander Services, Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998); *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996).  In making its determination, the court will enforce the intent of the parties as expressed in the language of the contract.  *Village of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995).

There is no dispute that the Policy here gives rise to duties by St. Paul both to defend and to indemnify Dollar Phone with respect to claims covered by the Policy.  The duty to defend arises from the following clause:

> We'll have the right and duty to defend any protected person against a claim or suit for injury or damage covered by this agreement.  We'll have such right and duty even if all of the allegations of the claim or suit are groundless, false, or fraudulent.  But we won't have a duty to perform any other act or service.

Insurance Policy between St. Paul and Dollar Phone, Technology Commercial General Liability Protection ("Commercial General Liability Part of Insurance Policy"), at p. 4 (*Bronstein Aff.* Ex.

H).[2]  The obligation to defend created by clauses like this one is broad.  It applies where any claim in the pleadings asserts a covered claim, even if the claim is false, frivolous, groundless, or will ultimately be demonstrated as not covered.  *See Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006) ("the duty to defend is 'exceedingly broad' and an insurer will be called upon to provide a defense whenever the allegations of the complaint 'suggest . . . a reasonable possibility of coverage'") (citation omitted).  "If the claims asserted, though frivolous, are within policy coverage, the insurer must defend irrespective of ultimate liability.  A declaration that an insurer is without obligation to defend a pending action could be made 'only if it could be concluded as a matter of law that there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy.'" *Servidone Constr. Corp. v. Security Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985) (internal citations omitted); *see also Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002) ("If the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend").  Where any of the claims arising from a single set of facts are covered by the policy, the insurer "consequently has a duty to defend the entire action brought under any of the [policies]" despite the presence of uncovered claims.  *Massena*, 98 N.Y.2d at 445; *see also BP A.C. Corp. v. One Beacon Ins. Group*, 8 N.Y.3d 708, 714 (2007).  *See, e.g., Automobile Ins. Co. of Hartford*, 7 N.Y.3d at 137-38 (although policy excluded intentional acts, where complaint alleged both negligence and intentional conduct, insurer had duty to defend); *Allstate Ins. Co. v. Zuk*, 78 N.Y.2d 41, 45-46 (1991).  There is thus a heavy burden on the insurance company to demonstrate that "the allegations of the complaint can

---

[2]  St. Paul has attached a copy of the Policy to the *Velardo Aff.* at Exhibit A.  St. Paul Rule 56.1 Stmt, ¶ 1 [DE 63-17].  Dollar Phone disputes whether this is a true copy of the Policy and thus attached the relevant excerpts as separate exhibits to the *Bronstein Aff.*  Dollar Phone Rule 56.1 Stmt, ¶¶ 1 [DE 69-21].  St. Paul maintains that its copy is accurate but does not dispute the accuracy of the excerpts submitted by Dollar Phone.  St. Paul Rule 56.1 Stmt in Opp., ¶ 1 [DE 70-1].  The court therefore refers to the documents attached to the Bronstein Affidavit in this opinion when citing to the Policy.

be interpreted only to exclude coverage." *Massena*, 98 N.Y.2d at 444; *see also Automobile Ins. Co. of Hartford*, 7 N.Y.3d at 137.

The broad duty to defend is to be distinguished from the more limited duty to indemnify. "The narrower duty to indemnify arises only if the claim for which the insured has been judged liable lies within the policy's coverage." *Allianz*, 416 F.3d at 115; *see also Servidone*, 64 N.Y.2d at 424 (indemnification is determined by the "actual basis for the insured's liability to a third person"). Where coverage is disputed, the burden is on the insurer to establish that the loss was not covered by the policy. *See Servidone*, 64 N.Y.2d at 425. This is necessarily a factual determination that, unlike the duty to defend, is resolved by a determination of actual coverage as opposed to theoretical coverage. *See, e.g., Servidone*, 64 N.Y.2d at 425 (further proceedings were required to "determine the basis for [liability] – not from the pleadings but from the actual facts"). Because the duty to indemnify is narrower than the duty to defend, if an insurer demonstrates that it has no obligation to defend, it will necessarily be relieved of the duty to indemnify.

## IV. GENERAL LIABILITY PART: ADVERTISING INJURY

The first branch of Dollar Phone's breach of contract claim arises under the Commercial General Liability portion of the Policy which provides coverage for certain "advertising injury" offenses. The Policy defines an "advertising injury offense" as "any of the following offenses":

- Libel, or slander, in or with covered material.

- *Making known to any person or organization covered material that disparages the business, premises, products, services, work, or completed work of others.* ["disparagement advertising injury offense"]

- Making known to any person or organization covered material that violates a person's right of privacy.

- Unauthorized use of any advertising material, or any slogan or title, of others in your advertising.

*See* Commercial General Liability Part of Insurance Policy, at p. 4 (*Bronstein Aff.*, Ex. H) (emphasis added).

Dollar Phone urges that IDT's complaint in the New Jersey action asserts a disparagement advertising injury offense covered by the second bullet point above, and that St. Paul's failure to provide defense and indemnity coverage for Dollar Phone in that action constituted a breach of the contract. "With respect to 'advertising injury,' New York law requires that 'to trigger [an insured's] duty to defend, the claimed injury must both arise out of an offense [1] occurring in the course of the insured's advertising activities and [2] constitute one of the enumerated offenses.'" *Elite Brands, Inc. v. Pennsylvania Gen. Ins. Co.*, 164 Fed. Appx. 60, 61 (2d Cir. 2006) (quoting *A. Meyers & Sons Corp. v. Zurich Am. Ins. Group*, 74 N.Y.2d 298, 303 (1989)). The parties do not dispute that the New Jersey complaint made claims arising out of Dollar Phone's advertising activities. The court thus must determine whether the allegations in the New Jersey complaint could reasonably be interpreted to constitute an enumerated offense under the disparagement advertising injury provision.

The central issue in this case is whether and to what extent the disparagement advertising injury offense provision in the Policy requires that the claim against the insured allege that the offending advertisement made a specific reference to a competitor. It is undisputed that there were no allegations in the New Jersey complaint that Dollar specifically referenced the New Jersey plaintiff's products in its advertisements. Rather, the New Jersey complaint alleged that by overstating the number of minutes Dollar's cards offered, Dollar Phone's advertisements implied that IDT offered less minutes and that its cards were thus overpriced. IDT therefore alleged that Dollar Phone's advertisements damaged its reputation as a calling card provider. St. Paul argues that these allegations did not qualify as disparagement because the New Jersey complaint did not allege that Dollar Phone's advertisements specifically referred to IDT's products or drew unfavorable comparisons with its competitors' products generally. In support,

-10-

St. Paul relies on the elements of the claim of disparagement in New York law.  Dollar Phone responds that St. Paul construes the scope of the term "disparage" too narrowly and advocates looking to its plain meaning rather than the elements of any specific causes of action.  Dollar Phone thus argues that allegations that its advertisements harmed the reputation of the calling card business in general and the New Jersey plaintiff in particular were sufficient to trigger the duty to defend.

Interpreting New York law, the Second Circuit has held that to trigger a disparagement advertising injury clause in an insurance policy, the offending advertisement must specifically refer to its competitor's product.  *See Elite Brands, Inc. v. Pennsylvania Gen. Ins. Co.*, 164 Fed. Appx. 60 (2d Cir. 2006), *affirming* No. 02-CV-5623, 2004 WL 1945732 (S.D.N.Y. Sept. 2, 2004).  There, the court found that an insurance company had no duty to defend Elite in a patent infringement case.  The patent infringement case involved claims by Fuji that Elite had sold infringing goods.  The district court noted that in support of its claims, Fuji presented testimony "that the low-priced allegedly infringing goods would lead Fuji's customers to believe that Fuji prices were unreasonably high."  2004 WL 1945732 at *5.  Elite argued that these claims fell under an "advertising injury" provision in the policy that covered "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."  *Id.* at *5-6.  The Second Circuit found that this provision did not trigger a defense obligation because the sale of infringing products did not constitute advertising at all.  The court also stated that "assum[ing] *arguendo*" that advertising was involved there, "Elite has failed to show that the alleged advertising injury applied to an enumerated offense within the meaning of the policies. . . . Under New York law, a claim of disparagement must contain 'specific assertions of unfavorable facts reflecting upon the rival product.'"  164 Fed. Appx. at 62 (quoting and citing New York cases defining the tort of disparagement).  Thus, the Second Circuit held that while an advertisement that reflects poorly

on a competitor may have caused some harm, the absence of a specific unfavorable reference to the competitor's product precluded policy coverage for a claim of disparagement.

Dollar Phone argues that *Elite* is inapposite because its discussion of the tort of disparagement was made "in passing" and did not address whether a policy's use of the word "disparages" can *only* refer to product disparagement, as opposed to other causes of action. Dollar Phone is correct that there may be other claims that fall under the disparagement advertising injury coverage here – there is no finding in *Elite* nor any statement in the Policy that establishes that the word "disparages" is triggered only by allegations that assert the tort of product disparagement. The reach of the "disparages" language is limited, however, and the claims in the complaint for which the plaintiff seeks coverage must be "sufficiently within the embrace" of the "kinds of claims against which the insuring agreement undertook to defend and, if necessary, indemnify." *Ruder & Finn Inc. v. Seaboard Surety Co.*, 52 N.Y.2d 663, 666-67 (1981); *see id.* at 669 ("The duty to defend arises whenever the allegations in the complaint fall within the risk covered by the policy."). While the contract must be construed in favor of the insured, that does not require the court to stretch the words of the contract or create fictitious causes of action. The purpose of the contract here is to defend against legal suits and the court can only reasonably look to the elements of the disparagement tort or analogous causes of action to determine whether the duty to defend exists.

New York law does not provide guidance as to whether the disparagement advertising injury clause at issue here embraces claims that do not require a specific reference to a competitor's products. Nor has Dollar Phone identified any such claims. Some guidance can be found in a California appellate court decision where a court presented with almost precisely this issue concluded that coverage under the disparagement advertising injury offense provision is limited to claims involving advertisements that refer specifically to a competitor's products. *See Total Call Int'l, Inc. v. Peerless Ins. Co.*, 181 Cal. App. 4th 161 (Cal. App. 2d Dist. 2010). In

*Total Call*, one of Dollar Phone's co-defendants in the New Jersey action sought coverage from its insurer under a similar "advertising injury" provision. The court found that the offenses covered by that provision were the torts of product disparagement, trade libel, and defamation. *Id.* at 169. All of these torts, however, require that the injurious statement specifically refer to, or be of and concerning, the plaintiff in some way. *Id.* at 170. The court found that the references in the New Jersey complaint to IDT's damaged reputation did not trigger insurance coverage because an allegation of damage to reputation without an allegation that the advertisement specifically referenced the competitor's product would be insufficient to establish any of the torts listed above. *Id.* at 171 ("The fact that the third party complaint mentions an element of a covered claim does not trigger the duty to defend when the facts known to the insurer, viewed as a whole, establish that no such claim is potentially asserted."). The court affirmed the granting of the insurance company's demurrer and found that the insured was not entitled to a defense or indemnification. The court finds that the reasoning of *Total Call* is equally applicable here and demonstrates that St. Paul is entitled to summary judgment on the breach of contract claim.

Dollar Phone disagrees with the approach taken in *Total Call* and instead argues that the plain meaning of the word "disparages" as found in dictionaries would trigger policy coverage for the New Jersey complaint. Even if the court were to follow Dollar Phone's dictionary approach, the plain meaning of the word "disparage" would require some reference or comparison to the competitor's products. For example, in *PCB Piezotronics, Inc. v. Kistler Instrument Corp.*, the court was faced with a similar contract provision and found that the use of the word "disparage" in the contract embraced claims beyond the common law tort of product disparagement. *See* No. 96-CV-0512, 1997 WL 800874, at *3 (W.D.N.Y. Dec. 31, 1997), *order amended*, 1998 U.S. Dist. LEXIS 6064 (W.D.N.Y. Apr. 23, 1998). The court found that "[r]eading the Policy as a whole, it is clear that the parties did not intend that 'disparage' would have a specialized legal meaning and instead intended that 'disparage' would have its ordinary

meaning, which is '[t]o speak of as unimportant or small,' to 'belittle,' '[t]o reduce in esteem or rank.'"  1997 WL 800874, at *3 (quoting The American Heritage Dictionary (2nd College Edition 1991)); *see also Acme United Corp. v. St. Paul Fire & Marine Ins. Co.*, 214 Fed. Appx. 596, 599 (7th Cir. 2007) ("Disparage means 'to discredit or bring reproach upon by comparing with something inferior.") (quoting Webster's Third International Dictionary (unabridged) 653 (1981)).  Thus, although the court in *PCB Piezotronics* held that coverage could extend beyond the tort of product disparagement, it examined the allegations in the complaint to determine whether the offending advertisement referred to the competitor.  And indeed, the duty to defend was invoked there by allegations that the insured's advertisements "misrepresent[ed] the nature, characteristics and qualities" of the competitors' goods.  1997 WL 800874, at *3.  This does not necessarily mean that the competitor's product must be identified by name and it may be enough that there be some identifying statement that compares the advertised product to those sold by competitors.  *See, e.g. Acme*, 214 Fed. Appx. at 599-600 (advertisements stating that insured's titanium products were "sharper, more durable, and longer lasting" drew sufficient comparison to plaintiff's steel products); *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1249, 1253 (N.D. Cal. 2008) (advertisement asserting that insured was the "'only' producer of 'all Java' and 'fully J2EE' software solutions" and that this "was an 'important differentiator' between competing products" disparaged insured's competitors by "clear implication"), *reconsideration denied sub nom. Infor Global Solutions (Michigan), Inc. v. St. Paul Fire and Marine Insurance Co.*, 686 F. Supp. 2d 1005 (N.D. Cal. 2010) (finding that the *Total Call* decision was not so inconsistent with *E.piphany* to constitute a material change in the law).  No such comparisons are alleged in the New Jersey complaint.

The court thus concludes that the unambiguous meaning of "disparage" in the advertising injury portion of the Policy requires either an allegation that the advertisement specifically referred to the competitor's products or touted one's own products as superior to those of its

competitors. There are no allegations in the New Jersey complaint that Dollar Phone's advertisements either specifically referenced its competitor's products or compared Dollar Phone's cards to other phone cards. The New Jersey plaintiff's unfair competition complaint certainly included repeated allegations that the misleading advertising "has damaged and is continuing to damage Plaintiff's reputation of being the best value provider of quality calling cards," "damaged the reputation of the prepaid calling card industry," and "[a]s a result of Defendants' acts as alleged above, Plaintiffs have suffered and will continue to suffer irreparable harm in the form of damage and injury to their business, reputation and goodwill." New Jersey complaint, at ¶¶ 8, 125 (*Velardo Aff.*, Ex. C). Reading these allegations plainly, however, they do not allege that the advertisements disparaged the plaintiff's goods, but rather that they hurt the plaintiff's business by unfairly shoring up Dollar Phone's reputation. It is only by referring to both the New Jersey plaintiff's advertisements and those of Dollar Phone that a consumer would draw the conclusion that Dollar Phone's products were superior. *See Total Call*, 181 Cal. App. 4th at 171 (such an advertisement "carries *no* implication that IDT's comparable cards cost more or less than TCI's cards; to ascertain such information, a consumer would have to consult IDT's own advertising"). As discussed above, this is insufficient to trigger St. Paul's duty to defend and the court thus concludes that the allegations of the New Jersey complaint did not trigger the duty to defend an advertising injury claim under the Policy.

### a. EXCLUSIONS TO ADVERTISING INJURY COVERAGE

Even if the New Jersey complaint alleged an advertising injury within the coverage of the Policy, one of the three exclusions from coverage relied upon by St. Paul applied to relieve it from its obligation to defend Dollar Phone. In this analysis, the court is mindful that "exclusions are subject to strict construction and must be read narrowly." *Automobile Ins. Co. of Hartford*, 7 N.Y.3d at 137. "[T]o negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable

interpretation, and applies in the particular case." *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003) (citation and internal quotation marks omitted). As with questions concerning coverage, questions concerning exclusions from coverage are assessed by examining the allegations in the claims asserted. *Automobile Ins. Co. of Hartford*, 7 N.Y.3d at 137 ("insurer will be required to provide a defense unless it can demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation") (quoting *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 159 (1992) (internal quotation marks omitted)). Once the insurer establishes that an exclusion applies, the burden shifts to the insured to demonstrate that the claim is covered. *Massena*, 98 N.Y.2d at 446.

### i. THE POOR QUALITY EXCLUSION APPLIES

The contract states that St. Paul will not cover an advertising injury that is due to the failure of the plaintiff's products to perform as promised:

> **Poor quality or performance**. We won't cover advertising injury that results from the failure of your products, your work, or your completed work to conform with advertised quality or performance.

Commercial General Liability Part of Insurance Policy, at p. 24 (*Bronstein Aff.*, Ex. H). In *Total Call*, the court found that even if the claims at issue alleged advertising injury, they were clearly excluded by a non-conformity exclusion that was similar to the one in the Policy here. *See Total Call*, 181 Cal. App. 4th at 172. The court relied on cases where coverage was denied because there were allegations that the "insured's advertising misrepresented the quality or price of the insured's own product." *Id.* (citing, *inter alia, Skylink Technologies, Inc. v. Assurance Co.*, 400 F.3d 982, 984-85 (7th Cir. 2005) (third party claim "relied entirely on the allegation that the seller's devices '[did] not live up to the promise'" in the advertisement) and *New Hampshire Ins. Co. v. Power-O-Peat, Inc.*, 907 F.2d 58, 58-59 (8th Cir. 1990) (allegations that insured's own advertising mislabeled its own products)). Here, the failure of Dollar Phone's products to

perform as promised is the entire basis of the New Jersey complaint and the New Jersey plaintiff's alleged injuries. Assuming *arguendo* that advertising injury is alleged, the harm to the New Jersey plaintiff's reputation is premised entirely on the inaccuracy of Dollar Phone's promises as to the number of minutes their cards provide. The New Jersey complaint alleged that the misrepresentation of Dollar Phone's product quality led consumers to assume that IDT's products were inferior, and once the false claims were discovered, the reputation of the entire industry was damaged. This is precisely the type of harm contemplated in the plain language of the non-conformity exclusion.[3]

### ii. THE WRONG PRICE DESCRIPTION AND FALSE MATERIAL EXCLUSIONS DO NOT APPLY

St. Paul's reliance on two other exclusions to advertising injury coverage, however, is unavailing. The "wrong price description" exclusion eliminates coverage for advertising injury "that results from the wrong description of the price of your products, your work or your completed work." Commercial General Liability Part of Insurance Policy, at p. 25 (*Bronstein Aff.* Ex. H). There is no allegation in the New Jersey Complaint that consumers were charged more or less than the price advertised for Dollar Phone's calling cards, and on the face of this exclusion, it cannot apply.

St. Paul also incorrectly disclaimed coverage based on a false material exclusion. This exclusion excludes coverage for "advertising injury that results from false material that: [] was made known by or for the protected person; and [] the protected person knew was false when it was made known." Commercial General Liability Part of Insurance Policy, at p. 18 (*Bronstein*

---

[3] The plaintiff relies on *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.* for the proposition that it is irrelevant to the New Jersey complaint that Dollar Phone's cards did not perform as advertised and that IDT's allegations focused on the damage that Dollar Phone's advertising did to IDT by implication. This is a misreading of the court's decision in *E.piphany* and the New Jersey complaint. In *E.piphany* the court found that the "failure to conform" exclusion did not apply because the advertising injury arose from negative comparisons made by the insured about its competitors in its advertisements. 590 F. Supp. 2d at 1248 n.5. Here, on the other hand, IDT's claims are not based on such comparisons. Rather, they are based on Dollar Phone's products' failure to perform as advertised.

*Aff.* Ex. H).  The exclusion will apply where the allegations of the complaint assert claims that are based solely on intentional conduct.  *See A.J. Sheepskin & Leather Co. v Colonia Ins.* Co., 273 A.D.2d 107, 709 N.Y.S.2d 82 (1st Dep't 2000) (where claims of advertising injury in the underlying complaint were "premised, without exception, upon conduct both knowing and intentional" the insurer was entitled to rely on a similar false material exclusion).  On the other hand, where there is "a reasonable possibility that liability in that action might be premised on unintentional or unknowing conduct not embraced by [the] exclusion," the exclusion will not apply.  *A.J. Sheepskin*, 273 A.D.2d at 108; *see also CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 751 F. Supp. 2d 444, 452 (E.D.N.Y. 2010).  As further discussed below, the New Jersey complaint included allegations of intentional conduct as well as allegations that allow the plaintiff there to recover based on a showing of negligence.  St. Paul was therefore not entitled to disclaim coverage based on the false material exclusion.

### iii.  THE "ACTUAL OR ALLEGED" LANGUAGE

The court rejects Dollar Phone's argument that there are ambiguities in the Policy that require the exclusions to be demonstrated (rather than simply alleged) before St. Paul could disclaim coverage.  Before "the rules governing the construction of ambiguous contracts are triggered, the court must find ambiguity in the policy."  *Breed v. Insurance Co. of North America*, 46 N.Y.2d 351, 355 (1978).  In the absence of any ambiguity in the contract, the court will enforce the parties' intent as expressed in the terms of the Policy. *See Alexander & Alexander Services, Inc*, 136 F.3d at 86; *K. Bell & Assocs., Inc.*, 97 F.3d at 637; *Village of Sylvan Beach, N.Y.*, 55 F.3d at 115.  Ambiguity does not exist simply because one party urges it and the court will not insert ambiguity into a contract where there is none.  *See Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, 616 (2d Cir. 2001) ("ambiguity does not exist 'simply because the parties urge different interpretations'") (citation omitted).

Dollar Phone points out that, although some exclusions in the Policy use the phrase "actual or alleged" in describing excluded conduct, the three exclusions relied on by St. Paul here do not. For example, the non-conformity exclusion accepted by the court above states that the Policy "won't cover advertising injury that results from the failure of your products, your work, or your completed work to conform with advertised quality or performance." Commercial General Liability Part of Insurance Policy, at p. 24 (*Bronstein Aff.* Ex. H). In contrast, Dollar Phone cites an "asbestos" exclusion where the Policy disclaims coverage for "injury or damage or medical expenses" resulting from specified dangers that are "actual, alleged, or threatened." Commercial General Liability Part of Insurance Policy, Amendment to Asbestos Exclusion (*Bronstein Aff.* Ex. J). According to Dollar Phone, the absence of the "actual or alleged" language in the non-conformity exclusion means that St. Paul can take advantage of the exclusion only upon proof that the advertising injury *actually* resulted from the non-conformity of an insured's products or work. In other words, advertising injury that is merely *alleged* to have resulted from the non-conformity of an insured's products or work is not subject to the exclusion, and St. Paul thus must provide a defense against such allegations even though St. Paul would not be required ultimately to indemnify Dollar Phone once the allegations are proven to be true.

There is no reasonable basis for concluding that the absence of the "actual or alleged" language in certain exclusions must be interpreted to mean that St. Paul has the duty to defend against allegations which, if proven to be meritorious, would be outside the coverage of the policy. Such an interpretation would completely alter the duty to defend as established in the case law and as defined in the contract. As noted above, the duty to defend under New York law arises if the allegations in the complaint, however groundless, assert a claim covered by the policy. *Servidone*, 64 N.Y.2d at 424; *Massena*, 98 N.Y.2d at 443-44. The Policy likewise states that St. Paul will defend against claims "covered by this agreement . . . even if all of the

*allegations* of the claim or suit are groundless, false, or fraudulent." Commercial General Liability Part of Insurance Policy, at p. 4 (*Bronstein Aff.* Ex. H) (emphasis added). Thus the duty to defend under both New York law and the terms of the Policy extends only to *covered* claims, and the plaintiff's argument that a duty to defend arises even if the allegations assert a claim excluded from the coverage of the policy is directly contrary to the duty to defend clause and the intention of the parties. *See Madawick Contracting Co., Inc. v. Travelers Ins. Co.*, 307 N.Y. 111, 119 (1954) ("words and phrases as used in particular contracts are to be interpreted in accordance with the meaning with which they have been invested by the parties"). There is no reason to look beyond the language of the contract provisions defining the defense obligation and the particular exclusion relied on in determining whether a claim is covered under the contract. The only way to find an ambiguity is to try to read each and every clause of the contract in conjunction, a form of contract interpretation that would render the entire contract ambiguous. Dollar Phone's argument thus inserts ambiguity where there is none and creates new obligations in the contract that are contrary to the expressed intent of the parties.

Moreover, the plaintiff's proposed interpretation would essentially add the word "actual" to any exclusion that did not include the "actual or alleged" phrase. The plaintiff would have the court interpret the non-conformity exclusion to exclude from coverage "*actual* advertising injury" resulting from non-conforming products or work, but not "*alleged* advertising injury" resulting from non-conforming products or work. The insurer would thus have the duty to defend against *alleged* advertising injuries, but no duty to either defend or indemnify if there was *actual* advertising injury. In that sense, under the plaintiff's interpretation the duty to defend would be narrower, not broader, than the duty to indemnify. The court "may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Reiss v. Financial Performance Corp.*, 97 N.Y.2d 195, 199 (2001) (internal quotation marks and citations omitted); *see also Vermont*

*Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004).  Yet that is precisely what the plaintiff asks the court to do.  Indeed, the plaintiff's interpretation would create a new contract under which the insurer is placed in the anomalous position of having to prove that their insured was actually liable for an injury in order to escape having to continue to provide coverage.  The plaintiff has offered no evidence to suggest that the parties entered into this insurance contract with such a nonsensical intent in mind.

The plaintiff's proposed interpretation of the contract based on the absence of the "actual and alleged" language in the advertising injury exclusions is therefore not reasonable and should be rejected.

## V.   ERRORS & OMISSIONS PART: WRONGFUL ACT

The second branch of Dollar Phone's breach of contract claim is that St. Paul should have provided coverage for the New Jersey complaint under the Errors & Omissions ("E&O") provisions of the Policy.  The court finds that even though the New Jersey complaint did allege claims nominally covered by the E&O provisions, St. Paul correctly relied on an exclusion to disclaim coverage.

The E&O provisions of the Policy provide coverage for a "wrongful act," defined as "any error, omission, or negligent act."   Insurance Policy between St. Paul and Dollar Phone, Technology Errors and Omissions Liability Protection ("E&O Liability Part of Insurance Policy"), at p. 2 (*Bronstein Aff.* Ex. M).   The parties disagree as to whether this includes intentional acts but it is understood that "[e]rrors and omissions policies generally provide coverage for acts of negligence and do not insure against intentional acts."  *Watkins Glen Cent. School Dist. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 286 A.D.2d 48, 51, 732 N.Y.S.2d 70 (2d Dep't 2001); *see also DeSantis Enters., Inc. v. American & Foreign Ins. Co.*, 241 A.D.2d 859, 860-61, 661 N.Y.S.2d 92 (3d Dep't 1997) (policy that covered losses caused "by any negligent act, error or omission" did not cover intentional acts).   In any event, the E&O part

contains an exclusion for intentional acts – it excludes any "loss that results from any criminal, dishonest, fraudulent, or other intentionally wrongful act or omission." E&O Liability Part of Insurance Policy, at p. 11 (*Bronstein Aff.* Ex. M). Therefore, if the New Jersey complaint is premised solely on intentional acts, it would be excluded from coverage under the E&O part.

To determine whether the claims in the New Jersey complaint rested solely on intentional conduct, the court must focus on "the facts which are pleaded, not the conclusory assertions." *Mugavero*, 79 N.Y.2d at 162; *see also Atlantic Mut. Ins. Co. v. Terk Tech. Corp.*, 309 A.D.2d 22, 32, 763 N.Y.S.2d 56 (1st Dep't 2003) (applying an intentional misconduct exclusion because "it is impossible to envision how [the insured] could have unknowingly, and unintentionally" committed the misconduct alleged in the third party complaint); *Monter v. CNA Ins. Companies*, 202 A.D.2d 405, 405-07, 608 N.Y.S.2d 692 (2d Dep't 1994) (applying an intentional conduct exclusion and disregarding allegations of gross negligence as inconsistent with the theory of the complaint). On the other hand, even where a complaint is focused on allegations of intentional conduct, if those "allegations . . . do not foreclose the possibility that [the insured] could have been liable . . . without the court finding that [the insured] knew that their conduct would violate [the plaintiffs'] rights and inflict the advertising injury at issue," the insurer will be required to defend. *See Bridge Metal Industries, L.L.C. v. Travelers Indemnity Co.*, 812 F. Supp.2d 527, 545 (S.D.N.Y. 2011). Thus, in *Bridge Metal*, the insured sought coverage for Lanham Act claims brought against it in connection with an advertising injury. The court found that although the complaint alleged intentional conduct, the Lanham Act claims asserted by the third-party plaintiffs allowed recovery even without proof of intentional conduct and therefore the insurer had a duty to defend. *Id.* at 544-45. The court found support in New York cases for the proposition that where the third-party plaintiff asserts claims that allow him to recover without proving intentional conduct, the insurer has a duty to defend regardless of allegations of intentional conduct in the complaint. *Id.* (citing cases). This conclusion is consistent with the

principle that the duty to defend will arise if there are any allegations in the complaint, no matter how frivolous, that suggest a possibility of coverage unless the insurer demonstrates that the allegations unequivocally demonstrate that coverage is excluded.

St. Paul correctly points out that the majority of the New Jersey complaint relies on allegations of intentional conduct. The complaint is based principally on the theory that Dollar Phone and its co-defendants were "systematically lying" to consumers, engaged in deliberate manipulation, and "intended to cause . . . deception of the public." New Jersey complaint, at ¶¶ 59-60, 123, 129, 137, 145, 152, 159, 166, 173, 180, 197 (*Velardo Aff.* Ex. C). Indeed, under the headings for each cause of action in the New Jersey complaint was a specific paragraph alleging that the defendants' false advertising was "intended to cause" a deception of the public. New Jersey complaint, at ¶¶ 123, 129, 137, 145, 152, 159, 166, 173, 180, 187 (*Velardo Aff.*, Ex. C). Nor are there any allegations in the New Jersey Complaint that use the word "negligent" to refer to Dollar Phone's conduct.

Nevertheless, the New Jersey plaintiff could have recovered from Dollar Phone without proof of intentional conduct. There are allegations in the Complaint that do not specify Dollar Phone's state of mind in engaging in certain misconduct. For example, allegations that Dollar Phone's advertisements omitted proper disclosures, (New Jersey complaint, at ¶¶ 85-86 (*Velardo Aff.*, Ex. C)), and misstated the number of minutes available on their cards, (*Id.* ¶¶101-104), do not allege that these misstatements were done intentionally. As another example, paragraphs in the IDT complaint specific to Dollar Phone allege that the minutes delivered to its consumers are significantly less than those advertised and that its advertising is thus "false, misleading and deceptive." New Jersey complaint, at ¶¶ 101-04 (*Velardo Aff.* Ex. C). These paragraphs do not allege that the advertisements are intentionally false, misleading and deceptive. Moreover, as Dollar Phone points out, the New Jersey plaintiff brought several claims under statutes that permit recovery even on the basis of negligent conduct. St. Paul thus was incorrect in

disclaiming coverage under the E&O part on the basis that the New Jersey complaint did not assert a covered claim and that the intentional conduct exclusion applied.

St. Paul was correct, however, in denying coverage under the E&O part on the basis of the "trade law" exclusion, which excludes coverage for "loss that results from any actual or alleged violation of any securities, antitrust, restraint of trade, unfair or deceptive trade practices, unfair competition, or other consumer protection law." E&O Liability Part of Insurance Policy, at p. 13 (*Bronstein Aff.* Ex. M). Dollar Phone first argues that the trade law exclusion only applies to claims involving intentional conduct and the complaint includes allegations of negligence. Although the court agrees that the New Jersey complaint is not premised exclusively on intentional conduct, there is nothing in the trade law exclusion that distinguishes between intentional and negligent conduct, nor has Dollar Phone provided the court with any legal or factual basis for applying the exclusion solely to intentional conduct.

Dollar Phone also argues that the Lanham Act claim in the first cause of action in the New Jersey complaint does not fall under the trade law exclusion because consumers do not have a private cause of action under the Lanham Act and therefore the statute is not a consumer protection law. This argument is unconvincing for two reasons. First, a statute may serve to protect consumers without providing consumers with a private cause of action. Second, even if the Lanham Act were not a consumer protection law, the allegations in the first cause of action clearly fall under the portion of the exclusion for "unfair or deceptive trade practices" or "unfair competition." The complaint alleges that Dollar Phone's advertising deceived the public about the quality of its goods and as a result, caused harm to the New Jersey plaintiff's business. The purpose of the Lanham Act provision cited in the New Jersey complaint (15 U.S.C. § 1125(a)(1)) is to protect "competitors and the public from misleading and false advertising." *Board of Managers of Soho Int'l Arts Condominium v. City of New York*, No. 01-CV-1226, 2003 WL 21403333, at *16 (S.D.N.Y. 2003) (citing *EMI Catalogue Partnership v. Hill, Holiday, Connors,*

*Cosmopulos Inc.*, 228 F.3d 56, 61 (2d Cir. 2000)); *see also Colligan v. Activities Club of New York, Ltd.*, 442 F.2d 686, 691 (2d Cir. 1971) (purpose of the Lanham Act "is to protect persons engaged in such commerce against unfair competition") (quoting 15 U.S.C. § 1127). Therefore, St. Paul correctly disclaimed coverage for Dollar Phone under the E&O part of the Policy based on the trade law exclusion.

The court has concluded that on the basis of the undisputed facts, Dollar Phone was not entitled to a defense under the terms of its insurance Policy with St. Paul in connection with the New Jersey action. Because the duty to defend is broader than the duty to indemnify, there would consequently be no duty to indemnify as well and St. Paul is entitled to summary judgment on the first cause of action in the Complaint.

## VI. GENERAL OBLIGATIONS LAW SECTION 349

St. Paul has moved for summary judgment on the plaintiff's claims in the second, third, and fourth causes of action in the Complaint, all of which are brought under New York General Obligations Law Section § 349 ("GBL § 349"), on the grounds that private contract disputes are not within the protection of that statute.[4] Dollar Phone opposes and argues that it has presented evidence that St. Paul's claims handling practices are deceptive as defined in the statute because St. Paul has failed to train its claims adjusters in accordance with accepted insurance industry standards.

GBL § 349 makes unlawful any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." McKinney's General Business Law § 349(a). To sustain a claim for deceptive practices under GBL § 349, a potential plaintiff must demonstrate harm to the public at large:

---

[4] While the statute is the heading for three separate causes of action, there is little to distinguish the three claims and, as a result, the parties and the court address the three GBL § 349 causes of action together. St. Paul has also moved for summary judgment as to the claims for alleged violations of New York Insurance Law Section 2601 in the second and third causes of action, but Dollar Phone asserts that it only references this statute as support for its GBL § 349 claims, not as separate claims.

> To state a claim pursuant to Section 349, a Plaintiff must show: (1) acts or practices that are "consumer oriented," (2) that such acts or practices are deceptive or misleading in a material way and (3) that plaintiff has been injured by reason of those acts.
>
> The consumer oriented prong of the Section 349 claim requires a plaintiff to show that the practices complained of have a "broad impact on consumers at large; 'private contract disputes unique to the parties . . . would not fall within the ambit of the statute.'"

*DePasquale v. Allstate Ins. Co.*, 179 F. Supp. 2d 51, 58 (E.D.N.Y. 2002) (internal citations omitted), *affirmed*, 50 Fed. Appx. 475 (2nd Cir. 2002); *see also S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996) (demonstration that defendant's conduct has an impact on consumers at large is a necessary element to establish liability under the statute) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995)).

Courts have "[a]lmost uniformly" held that "disputes between policy holders and insurance companies concerning the scope of coverage" constitute "nothing more than private contractual disputes that lack the consumer impact necessary to state a claim pursuant to Section 349." *DePasquale*, 179 F. Supp. 2d at 62 (citing cases); *see also Zawahir v. Berkshire Life Ins. Co.*, 22 A.D.3d 841, 842, 804 N.Y.S.2d 405 (2d Dep't 2005); *Sichel v. UNUM Provident Corp.*, 230 F. Supp. 2d 325, 330 (S.D.N.Y. 2002) (citing, *inter alia*, *New York Univ. v. Continental Insur. Co.*, 87 N.Y.2d 308, 320-21 (1995)). The one instance where such GBL § 349 claims have been allowed to proceed are those where the plaintiffs alleged that they purchased insurance policies based on defendants' false representations regarding the terms of the insurance policies. *See, e.g., Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 343-45 (1999) (allowing class action to proceed under GBL § 349 where plaintiffs alleged they purchased insurance policies based on defendants' false representations regarding terms of the insurance premiums).

In support of its GBL § 349 claim, Dollar Phone argues that the lack of training and supervision of its claims adjusters demonstrates that St. Paul has a system in place designed to deny legitimate insurance claims. In support of its allegations that St. Paul's claims review procedures was "part of a broader scheme to deny claims against its insureds" (Compl. ¶ 44), Dollar Phone relies on the deposition testimony of Pam Matsufuji, the claims adjuster that made the decision to deny coverage for the New Jersey complaint. Ms. Matsufuji testified, among other things, that she makes coverage decisions based on her common sense reading of the policies and without guidance from the legal staff. *See* Deposition of Pam Matsufuji, (excerpts), *Bronstein Aff.* Ex. C. Dollar Phone argues that the following facts demonstrate that the claims review process is deceptive: St. Paul does not require its claims adjusters to (1) have a college degree or equivalent education; (2) follow any guidelines or go through any training for the interpretation of policy provisions, (3) be under supervision for the interpretation of insurance policies and decisions to deny a claim; (4) report to anybody else in St. Paul a decision to deny any insured's claim; (5) seek advice from St. Paul's legal department in interpreting a provision and deciding to deny a claim; (6) refer to any relevant legal authority in deciding claims; or (7) collect and refer to any prior lawsuits, claim resolutions, or trade publications.[5]

Dollar Phone's list of facts does not identify any materially deceptive acts or omissions that target consumers on a broad scale. "A deceptive act or practice is 'a representation or omission likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Sichel*, 230 F. Supp. 2d at 331 (quoting *Gaidon*, 94 N.Y.2d at 344); *see, e.g., Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264-65 (2nd Cir. 1995) (GBL § 349 claim established where the defendant intentionally made false statements regarding a competitor's

---

[5] As further discussed in the text, even if these facts were true, Dollar Phone fails to create an issue of fact necessary to proceed with the GBL § 349 claim. There is also evidence in the record that undermines these broad assertions. Ms. Matsufuji testified at her deposition that there is no connection between how many claims she grants or denies and her evaluation as an employee. She also testified that as part of her training she is required to go through a yearly recertification process as to her knowledge of the California Fair Claims Practice Act. Deposition of Pam Matsufuji at 34-36 [DE 32, Ex. A].

product to a regulatory agency that potentially affected public safety); *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 338 F. Supp. 2d 422, 428-29 (E.D.N.Y. 2004) (GBL § 349 claim established where defendant's deceptive conduct consisted of a misleading statewide and national advertising campaign). Dollar Phone has failed to identify any false statement, representation, or omission made by St. Paul upon which it relied or acted. The mere fact that St. Paul's claims adjusters are not adequately trained is not deceptive, nor is it fraudulent. Absent any false promises by St. Paul regarding the training, knowledge, or expertise of its claims adjusters that Dollar Phone relied on, Dollar Phone's GBL § 349 claim does not even make it out of the starting gate. *See Sichel*, 230 F. Supp. 2d at 331 (granting motion to dismiss GBL § 349 claim where plaintiff failed to allege that the public relied on any misrepresentation by the insurer). To the extent that the coverage here was wrongly denied, it was at most a breach of contract, not a deceptive practice. Moreover, since Dollar Phone cannot demonstrate that it relied on a deceptive practice, it certainly cannot demonstrate that St. Paul deceived consumers on a broader scale. Finally, as discussed above, St. Paul correctly denied coverage for the claims in the New Jersey complaint and therefore Dollar Phone cannot demonstrate the third element of a GBL 349 claim, that it was injured by any purported deceptive practice.

The plaintiff's reliance on *Riordan v. Nationwide Mutual Fire Ins. Co.*, 756 F. Supp. 732, 738 (S.D.N.Y. 1990), *aff'd*, 977 F.2d 47, 51-52 (2d Cir. 1992) is unhelpful to its case. There, the court allowed a suit to proceed beyond the motion to dismiss stage where the plaintiffs alleged the existence of a claim settlement policy designed to deceive certain categories of policyholders. Like Dollar Phone, those plaintiffs alleged that this policy violated § 2601 of the New York Insurance Law, but unlike Dollar Phone, they made various factual allegations of deceptive practices by the defendants. For instance, they alleged that the insurer engaged in "deceptive advertising" which falsely "suggest[ed] prompt and efficient claim settlement" procedures. *See* 756 F. Supp. at 736. The plaintiff alleged specific facts that these actions were part of an effort

to coerce policyholders to settle for less than that to which they were entitled. *Id.* at 739. While these factual allegations were sufficient to defeat a motion to dismiss, *Riordan* does not stand for the proposition that simply claiming that a specific practice is deceptive would create an issue of fact at the summary judgment stage. Here, Dollar Phone's theory of recovery is based solely on its claims regarding the lack of training of St. Paul's claims adjusters. There is no legal or factual basis for concluding that the lack of training is either materially deceptive or aimed at the public.

In connection with its opposition to St. Paul's motion for summary judgment, Dollar Phone has submitted an affidavit of an expert to show that St. Paul's insurance adjusters are not properly trained in accordance with industry standards. *See Affidavit of Noson Kopel*, at DE 69-20. As noted in my memorandum dated November 4, 2010 (DE 62), I had deferred expert discovery on the express understanding that the opinions of experts would have no bearing on any summary judgment motion. As a result, reliance on an expert affidavit is entirely inappropriate here. Nonetheless, the affidavit misses the mark entirely. The affidavit reiterates the conclusions asserted by Dollar Phone that St. Paul has failed to train its claims adjusters in accordance with insurance industry standards. It does not identify how this lack of training is deceptive, and, as a result, is not a basis for denying summary judgment to St. Paul on the GBL § 349 claim.

## CONCLUSION

In accordance with the above considerations, the undersigned hereby recommends that St. Paul's motion for summary judgment be granted and that Dollar Phone's cross-motion for summary judgment be denied.

*        *        *        *        *

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified

time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Respectfully Recommended,**

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
March 9, 2012